IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| PATRICK SALAMONE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-326 |
| | ) |
| FEDCORP, INC., | ) JURY DEMAND |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Comes now Plaintiff ("Plaintiff" or "Salamone"), by and through the undersigned counsel, and hereby files this Complaint against Defendant, FEDCorp, Inc. ("Defendant" or "FEDCorp") for attorneys' fees pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D)), Retaliation and Interference pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.*, and the Families First Coronavirus Response Act ("FFCRA"), 29 U.S.C. § 2601 *et seq.*, and Retaliation in violation of the Taxpayers First Act's anti-retaliation provisions, 26 U.S.C. § 7623, as follows:

### INTRODUCTION

1. Salamone asserts claims against FEDCorp for attorneys' fees due to FEDCorp's unjustified and bad-faith assertion of trade secret misappropriation claims filed in state court against Salamone, without evidence of misappropriation, and merely as a retaliatory action because of Salamone's complaints of improper business practices at FEDCorp. The trade secrets claims are designed to disgrace Salamone in the banking/financial industry, destroy his reputation, and preclude him from obtaining gainful unemployment. Such actions are in violation of the

Defend Trade Secrets Act and public policy. In addition, Salamone asserts claims of Retaliation and Interference under the Family and Medical Leave Act ("FMLA"), and Families First Coronavirus Response Act ("FFCRA") asserting that FEDCorp eliminated his rights under the FMLA and FFCRA by terminating his employment in retaliation for past, present, or future enforcement of his rights.

2. In addition, Salamone asserts claims for retaliation as a whistleblower under the Taxpayers First Act, 26 U.S.C. § 7623(d), which protects employees such as Salamone who report issues of underpayment of taxes, other potential violations of IRS laws, and issues related to improper tax filings. Salamone was the Controller of FEDCorp and made numerous complaints of what he reasonably believed to be improper tax reporting and improper tax practices to his supervisors and the owners of FEDCorp regarding improper tax issues. FEDCorp continuously refused to address these issues and instead improperly terminated Salamone in violation of the Taxpayers First Act's anti-retaliation provisions, 26 U.S.C. § 7623. Salamone has suffered substantial damages, including loss of pay, loss of benefits, compensatory damages, interest, costs of litigation, and attorneys' fees.

## THE PARTIES

3. Mr. Salamone is an individual and a resident of Baldwin County, Alabama.

4. FEDCorp, Inc. is an Alabama corporation. FEDCorp regularly conducts business in Mobile County, Alabama.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, 18 U.S.C. § 1836(b)(3)(D), the FMLA, 29 U.S.C. § 2611, *et seq.*, the FFCRA, 29 U.S.C. § 2601, *et seq.*, and pursuant to the Taxpayers First Act Retaliation claims

under 28 U.S.C. § 1331 and 26 U.S.C. § 7623(d)(2)(A)(ii) as this is the appropriate district court having jurisdiction over this action.

6. FEDCorp is substantially involved in business across several states, including Alabama, Mississippi and Florida, and therefore has a substantial nexus with interstate commerce to be subject to the Defend Trade Secrets Act.

7. Salamone filed his complaint with OSHA on October 14, 2020. It has now been more than 180 days since the filing of his OSHA Complaint, and OSHA has not entered any decision. Pursuant to 26 U.S.C. § 7623(d)(2)(A)(ii), Salamone may seek relief in this District Court "if the Secretary of Labor has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant…."

8. Salamone filed his OSHA Complaint on October 14, 2020 and filed his Notice of Intent to OSHA on April 27, 2021, informing OSHA of his intent to seek relief in Federal Court as more than 180 days have passed since the filing of his OSHA Complaint without issuance of a final decision. (Exhibit A: Letter of Intent to OSHA).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to this litigation took place in this District.

## **FACTS**

10. Salamone began his employment at FEDCorp in 2019 when he was hired as Controller.

11. Salamone worked for almost a year without any performance issues or disciplinary issues.

12. Upon working on for FEDCorp, Salamone began to discover improper business activities.

13. Mr. Salamone reported these concerns to Chip Smith, the CFO / Vice President of FEDCorp and Mr. Salamone's supervisor.

14. Specifically, in the fall of 2019, Mr. Salamone reported that he was unwilling to falsify documents to obtain a Florida business license because FEDCorp's taxes were unpaid.

15. Mr. Salamone also contacted FEDCorp's previous Controller to find out why FEDCorp was not properly paying taxes. FEDCorp's owner and Mr. Salamone's supervisor, Mike Pruitt, stepped in to tell Mr. Salamone that he would handle everything and Mr. Salamone should not worry about it.

16. In early 2020, Mr. Salamone had a conversation with Chip Smith regarding several issues of non-compliance at FEDCorp. Mr. Salamone informed Mr. Smith that FEDCorp was operating with a revoked license in the State of Mississippi, had filed a fraudulent form in the State of Florida, and had not paid federal taxes for three (3) years. Mr. Smith responded that FEDCorp's cash was understated and he wasn't going to book the cash to income and just say "here's a bunch of money IRS." Instead, Mr. Smith stated FEDCorp would whittle the cash number and get it directionally correct in the future.

17. In January of 2020, Mr. Salamone had another conversation with Mike Pruitt regarding FEDCorp not filing taxes in multiple years and operating illegally in several states.

18. For each of Mr. Salamone's complaints to FEDCorp, Mr. Salamone reasonably believed FEDCorp's actions violated IRS laws and involved tax improprieties and irregularities.

19. During the COVID-19 Pandemic, Mr. Salamone began working from home to help care for his child.

20. He generally worked from home from March through May of 2020.

21. Mr. Salamone would go to the office once a week. FEDCorp did not complain about his work product during this time and never disciplined him for any performance issues.

22. On or about July 16, 2020, Mr. Salamone spoke with Chip Smith again. Mr. Salamone informed Mr. Smith that FEDCorp's balance sheet was not right and that taxes had not been filed again in 2019. Mr. Salamone further informed Mr. Smith that this was improper, that taxes had not been filed for the fourth year in a row, and that this situation should be taken care of immediately.

23. Later on the same date, on or about July 16, 2020, Mr. Salamone informed Mr. Smith that he was likely going to have to take family leave accommodations due to COVID-19 in order to work from home starting in September 2020 due to schools being closed.

24. During the week of July 20-24, 2020, Mr. Salamone was on vacation.

25. Mr. Salamone returned to work on July 27, 2020 and was terminated with no true explanation.

26. Upon information and belief, Mr. Salamone's termination was in retaliation for his reporting of his reasonable beliefs of improper business activities and tax issues and his request to take leave associated with the FMLA and the FFCRA.

27. On July 28, 2020, Mr. Salamone was served with a cease and desist letter.

28. On July 31, 2020, Mr. Salamone was served with a Summons and Complaint alleging misappropriation of trade secrets, interference with contractual and business relationships, and conversion.

29. The lawsuit does not describe what trade secrets or confidential information it contends Mr. Salamone has used, disclosed, or otherwise misappropriated.

30. After his termination, in an effort to protect his reputation and report his concerns of improper activity at FEDCorp, Mr. Salamone contacted other companies and disclosed known, public, and readily ascertainable information about FEDCorp. Mr. Salamone did not disclose any trade secrets, confidential or proprietary information and did not interfere with any business relationships of FEDCorp.

31. Mr. Salamone did not have a non-compete or non-solicitation agreement with FEDCorp.

32. Upon information and belief, FEDCorp does not have any identifiable trade secrets and is aware of this.

33. Despite having no identifiable trade secrets, upon information and belief FEDCorp filed a claim alleging violation of trade secrets against Mr. Salamone in bad faith and in retaliation for Mr. Salamone's complaints while having knowledge that FEDCorp does not have any actual trade secrets and, therefore, knowing that Mr. Salamone did not and could not have disclosed any actual trade secrets.

## COUNT I
### Attorneys' Fees Pursuant to 18 U.S.C. § 1836(b)(3)(D)

34. Mr. Salamone repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

35. The DTSA provides that where a claim of misappropriation thereunder is made in bad faith, the Court may award reasonable attorneys' fees to the prevailing party. Bad faith may be established by circumstantial evidence.

36. FEDCorp's Complaint asserts a claim against Mr. Salamone for misappropriation of trade secrets.

37. Based on the facts and circumstances outlined above, FEDCorp's misappropriation claims have been brought in bad faith.

38. Upon information and belief, FEDCorp brought its trade secrets claims knowing it does not actually have any trade secrets that Defendant could have disclosed. In addition, the claims were brought in retaliation because of FEDCorp's reporting of alleged improper and illegal business practices and tax filings.

39. Mr. Salamone has incurred and continues to incur attorney's fees in responding to the lawsuit.

40. Mr. Salamone is entitled to recover an award of attorneys' fees under the DTSA due to FEDCorp's bad faith misappropriation claim against him.

**COUNT II**
**Retaliation and Interference Pursuant to the FMLA, 29 U.S.C. § 2611, *et seq*., and the FFCRA, 29 U.S.C. § 2601, *et seq*.**

41. Mr. Salamone repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

42. FEDCorp is a company with less than 500 employees and is thus subject to the Family and Medical Leave Act ("FMLA") and Families First Coronavirus Response Act ("FFCRA").

43. Due to the coronavirus pandemic, Mr. Salamone was required to work from home to help care for his child. He generally worked from home during March, April, and May 2020.

44. He informed his supervisor, Mr. Chip Smith, that he would likely have to work from home once school started back in September of 2020. His request for leave and accommodation was due to a bona fide need to care for his child (under 18 years old) due to school closures.

45. Mr. Smith was unhappy that Mr. Salamone was previously allowed to work from home and was upset he was going to have to work from home in the future.

46. During his conversation with Mr. Smith, Mr. Smith informed Mr. Salamone that he was upset that Mr. Salamone would have to work from home or take leave due to the FMLA and the FFCRA.

47. Mr. Salamone was terminated because of his protected activity.

48. FEDCorp unlawfully retaliated and otherwise discriminated against Mr. Salamone because of conduct protected by the FMLA and FFCRA.

49. FEDCorp's conduct was not in good faith and it did not have reasonable grounds for believing it did not violate the FMLA and FFCRA.

50. FEDCorp's conduct was willful and intended to deprive Mr. Salamone of rights under the FMLA and FFCRA.

51. There is a casual link between Mr. Salamone's termination and his request for FMLA and FFCRA act accommodations.

52. Upon information and belief, FEDCorp violated the FMLA, 29 U.S.C. § 2615(a)(1), and the FFCRA, 29 U.S.C. § 2611, *et seq.*, in that FEDCorp interfered with Mr. Salamone's rights under the FMLA and FFCRA and eliminated his rights under the FMLA and FFCRA by terminating his employment in retaliation for past, present, or future enforcement of his rights under the FMLA and FFCRA.

53. As a result of FEDCorp's actions, Mr. Salamone has suffered and will continue to suffer substantial lost wages and benefits.

54. As a further result of FEDCorp's actions, Mr. Salamone has incurred and will continue to incur attorneys' fees and costs. Mr. Salamone claims for attorneys' fees and costs are made pursuant to 26 U.S.C. § 2617(a).

55. As a further result of FEDCorp's actions, Mr. Salamone has lost the time value of his money, and he claims interest pursuant to 26 U.S.C. § 2617(a).

56. Furthermore, as a result of FEDCorp's actions, Mr. Salamone is entitled to liquidated damages pursuant to 26 U.S.C. § 2617(a).

WHEREFORE, Salamone requests the following relief in connection with Count II:

(a) Wages, employment benefits or other compensation denied or lost by such violations, including but not limited to back pay and front pay;

(b) An amount of liquidated damages;

(c) Equitable relief such as employment, reinstatement or promotion or payment of benefits;

(d) Reinstatement;

(e) Reasonable attorneys' fees and the costs of litigation; and

(f) Interest.

## COUNT III
### Retaliation for Reporting Alleged Improper Tax Activity
### Pursuant to 28 U.S.C. § 7623(d)

57. Mr. Salamone repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. The Taxpayers First Act provides that "No employer, or any officer, employee, contractor, subcontractor, or agent of such employer, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment (including through an act in the ordinary course of such employee's duties) in reprisal

9

for any lawful act done by the employee….” 26 U.S.C. § 7623(d)(1). This provision includes protections for employees who provide information regarding the "underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud" including reports to "a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct….” 28 U.S.C. § 7623(d)(1)(A).

59. Salamone reported numerous concerns to FEDCorp regarding FEDCorp's failure to pay taxes, improper tax practices, and other issues concerning potential tax activities and potential tax fraud.

60. FEDCorp refused to address Salamone's concerns and instead terminated him in direct retaliation because of his protected activity.

61. FEDCorp unlawfully retaliated and otherwise discriminated against Mr. Salamone because of conduct protected by the Taxpayers First Act.

62. Salamone had reasonably believed FEDCorp's conduct was improper and violative of IRS tax procedures and regulations.

63. FEDCorp's conduct was not made in good faith.

64. FEDCorp's conduct was willful and intended to deprive Mr. Salamone of rights under the Taxpayers First Act.

65. There is a casual link between Mr. Salamone's termination and his complaints concerning improper tax practices by FEDCorp.

66. Upon information and belief, FEDCorp violated the Taxpayers First Act, 28 U.S.C. § 7623(d), in that FEDCorp terminated Salamone's employment in retaliation for his complaints.

67. As a result of FEDCorp's actions, Salamone has suffered, and will continue to suffer, substantial lost wages and benefits.

68. As a further result of FEDCorp's actions, Mr. Salamone has incurred and will continue to incur litigation costs, including attorneys' fees and costs. Mr. Salamone claims attorneys' fees and costs pursuant to 26 U.S.C. § 7623(d)(3)(B).

69. As a further result of FEDCorp's actions, Mr. Salamone has lost the time value of his money, for which he claims interest.

70. Furthermore, as a result of FEDCorp's actions, Mr. Salamone is entitled to reinstatement, 200 percent of his back pay and 100 percent of all lost benefits, with interest, pursuant to 26 U.S.C. § 7623(d)(3)(B).

WHEREFORE, Salamone requests the following relief in connection with Count III:

(g) Wages, employment benefits or other compensation denied or lost by such violations, including but not limited to 200 percent of back pay, 100 percent of all lost benefits, with interest;

(h) Reasonable attorneys' fees and the costs of litigation;

(i) Interest;

(j) All other relief necessary to make Salamone whole; and

(k) That the Court award any such other and further relief in law or equity that the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Salamone demands a jury trial on all issues raised in this Complaint.

DATED this __22nd__ day of __July__, 2021.

Respectfully submitted,

*/s/ Joshua D. Wilson*
Joshua D. Wilson (ALA BAR # WIL325)
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, TN  37203
(615) 742-9313 – direct dial
(615) 242-4203 – fax
jwilson@manierherod.com

Walton Hickman
LONG & LONG
301 Saint Louis St.
Mobile, AL 36602
(251) 445-6000 – telephone
(251) 445-0282 – fax
walton@longandlong.com